**EXHIBIT**

**Attachment A**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT
## APPEAL NUMBER 23-13714

### SHA'OLA TERRELL,

### PLAINTIFF/APPELLANT,

### v.

### ALABAMA STATE UNIVERSITY,

### DEFENDANT/APPELLEE.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA
## CIVIL ACTION NO.: 2:22-CV-47-RAH

### BRIEF OF THE APPELLEE

### ALABAMA STATE UNIVERSITY AND THE BOARD OF TRUSTEES FOR ALABAMA STATE UNIVERSITY

Kenneth L. Thomas, Esq.
Ramadanah M. Salaam-Jones, Esq.
Attorneys for Alabama State University
Office of the General Counsel
**ALABAMA STATE UNIVERSITY**
P.O. Drawer 271
Montgomery, Alabama 36101-0271
(334) 229-1465 (phone)
kthomas@alasu.edu
rsjones@alasu.edu

## <u>CERTIFICATE OF INTERESTED PARTIES</u>

Appellees, Alabama State University and the Board of Trustees for Alabama State University (collectively referred to as "ASU"), certify that pursuant to the Federal Rules of Appellate Procedure, Rule 26.1, and the Eleventh Circuit Court of Appeals Rules, Rules 26.1-1, 26.1-2 and 26.1-3, the following represents a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships or corporations that have an interest in the outcome of this case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, any publicly held corporation that owns 10% or more of the party's stock, and other identifiable legal entities related to a party:

1. *Alabama State University*, Defendant/Appellee, and public university in the State of Alabama;

2. *Board of Trustees for Alabama State University*, the governing body for Defendant/Appellee Alabama State University

3. *Huffaker, Robert A.,* District Court Judge, United States District Court for the Middle District of Alabama

4. *Johnston, Jamie A.,* Counsel for the Plaintiff/Appellant

5. *RSUI Group, Inc.*, the insurer for Defendants/Appellees Alabama State University and the Board of Trustees for Alabama State University

6. *Salaam-Jones, Ramadanah M.,* Counsel for Defendant/Appellee Alabama State University

7. *Terrell, Sha'Ola*, Plaintiff

8. *Thomas, Kenneth L.*, Counsel for Defendant/Appellee Alabama State University

Respectfully Submitted,

/s/ Ramadanah M. Salaam-Jones

**KENNETH L. THOMAS (THO043)**
**RAMADANAH S. JONES (SAL026)**
***Attorneys for Alabama State University and the Board of Trustees for Alabama State University***

**OF COUNSEL:**
Kenneth L. Thomas, Esq.
Ramadanah M. Salaam-Jones, Esq.
Office of the General Counsel
**ALABAMA STATE UNIVERSITY**
P.O. Drawer 271
Montgomery, Alabama 36101-0271
(334) 229-1465 (phone)
kthomas@alasu.edu
rsjones@alasu.edu

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Appellees do not request oral argument.  The issues presented in this case are standard issues of employment discrimination and the Equal Pay Act of 1963.  These issues and are not novel.  The facts in this case are not extensive.  The Appellees do not believe that oral argument would assist the Court in resolving this appeal.

# **TABLE OF CONTENTS**

Certificate of Interested Parties.................................................................C1

Statement Regarding Oral Argument ..........................................................i

Table of Contents ..........................................................................................ii

Table of Authorities .....................................................................................iv

Statement of the Issues..................................................................................1

Statement of the Case....................................................................................2

    I.     The Course of the Proceedings Below .....................................2

    II.    Statement of Facts ......................................................................2

      A. Terrell's Employment at ASU.................................................2

      B. Terrell's Alleged Comparators ...............................................2

    III.    Standard of Review .....................................................................8

Summary of the Argument............................................................................8

Argument.........................................................................................................9

    I.     Terrell Failed to Present Evidence of a Proper Comparator to Support Her Claims Under the EPA and the CFEPA....................................................9

      A. Dr. Brown, Lonnie Brown and Magee Were Not Paid More Than Terrell for Substantially Similar Work ...............................12

      B. Terrell Failed to Establish that She and Jones Performed Substantially Similar Work .......................................................................14

II.    Terrell Cannot Establish a Prima Facie Case of a Pay Disparity Under Title IX ................................................................................16

III.    ASU Had Legitimate, Non-Discriminatory Factors Other Than Sex In Establishing Terrell's Salary ................................................21

    A. The Maximum Salary for Terrell's Job Was Set Prior to Her Being Selected for the Position........................................................21

    B. Terrell Cannot Show Pretext in ASU's Reasons for Setting Her Salary ..................................................................................23

IV.    ASU Did Not Retaliate Against Terrell ....................................26

    A. Terrell Did Not Engage in Protected Activity ....................................27

    B. ASU Had Legitimate, Non-Retaliatory Reasons for Terrell's Non-Reappointment........................................................29

        1. Terrell was non-reappointed because of the restructuring of the Department of Athletics ....................................29

        1. Terrell cannot establish pretext in ASU's legitimate, non-retaliatory reason for her non-reappointment ................................30

Conclusion ..........................................................................32

Certificate of Compliance ........................................................34

Certificated of Service .............................................................35

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

<u>Arrington v. Cobb</u>, 139 F.3d 865, 876 (11th Cir. 1998) ............................................12

<u>Blackmon v. Fla. Dep't of Bus. & Prof'l Regulation</u>, 599 Fed. Appx. 907, 909 (11th Cir. 2015) ....................................................................................................12

<u>Brennan v. City Stores, Inc.</u>, 479 F.2d 235, 238 (5th Cir. 1973) ............................15

<u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1030 (11th Cir. 2000) ............... 11, 25, 33

<u>Combs v. Plantation Patterns</u>, 106 F.3d 1519, 1538 (11th Cir. 1997) ............. 26, 33

<u>Crawford v. City of Fairburn, Ga.</u>, 482 F.3d 1305, 1308 (11th Cir. 2007) ...... 25, 33

<u>E.E.O.C. v. White & Son Enters.</u>, 881 F.2d 1006, 1011 (11th Cir. 1989) .............29

<u>EEOC v. Joe's Stone Crab, Inc.</u>, 220 F.3d 1263, 1286-1287 (11th Cir. 2000) .........26

<u>Elrod v. Sears, Roebuck and Co.</u>, 939 F.2d 1466, 1472 ..........................................10

<u>Furcron v. Mail Ctrs. Plus, LLC,</u> 843 F.3d 1295, 1304 (11th Cir. 2016) .................8

<u>Hamilton v. Sikorsky Aircraft, Corp.</u>, 760 Fed. Appx. 872, 876-77 (11th Cir. 2019) ........................................................................................................................12

<u>Hazelwood Sch. Dist. v. United States</u>, 433 U.S. 299, 307, 308, 53 L. Ed. 2d 768, 97 S. Ct. 2736 (1977) ..........................................................................................27

<u>Heatherly v. Univ. of Ala. Bd. of Trs.</u>, 778 Fed. Appx. 690, 692 (11th Cir. 2019) 13, 14

<u>Hodgson v. Golden Isles Convalescent Homes, Inc.</u>, 468 F.2d 1256 (5th Cir. 1972) ........................................................................................................................16

<u>Hornsby-Culpepper v. Ware</u>, 906 F.3d 1302, 1313 (11th Cir. 2018) .............. passim

<u>Hubbard v. Delchamps, Inc.</u>, C.A.N. 97-1188-AH-S, 1998 U.S. Dist. LEXIS 11049, at *13-14 (S.D. Ala. July 10, 1998) ........................................................27

<u>Irby v. Bittick</u>, 44 F.3d 949, 954 (11th Cir. 1995) ...................................................10

<u>Jackson v. State of Ala. State Tenure Comm'n</u>, 405 F.3d 1276, 1289 (11th Cir. 2005) ................................................................................................ 25, 33

<u>Jennifer Williams v. Alabama State University</u>, et al, C.A.N.: 2:22-CV-48-ECM-KFP .......................................................................................................................26

<u>Kilgore v. Trussville Dev., LLC</u>, 646 F. App'x 765, 773 (11th Cir. 2016) .............31

<u>Loeb v. Textron, Inc.</u>, 1 Cir.1979, 600 F.2d 1003, 1012 ........................................23

<u>Megill v. Board of Regents</u>, 5 Cir.1976, 541 F.2d 1073, 1077 ...............................23

<u>Miller v. Roche Sur. & Cas. Co.</u>, 502 F. App'x 891, 894 (11th Cir. 2012) ...... 29, 30

Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1526 (11ᵗʰ Cir. 1992)13, 14

Morris v. Wallace Cmty Coll. Selma, 125 F. Supp. 2d 1315, 1342-43 (S.D. Ala. 2001) ........................................................................................................17

Mozee v. American Commercial Marine Service Co., 940 F.2d 1036, 1051 (7th Cir.1991) ........................................................................................................26

Mulhall v. Advance Sec., Inc., 19 F.3d 586, 592 (11ᵗʰ Cir. 1994) ................... 10, 12

Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984) ....23

Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001)..............31

Reddy v. Dep't of Educ., 808 Fed. Appx. 803, 810 (11ᵗʰ Cir. 2020) ......... 10, 11, 25

Reza v. Univ. of S. Ala., 2018 U.S. Dist. LEXIS 207029, No. 18-CV-000009-JB-B (S.D. Ala. December 4, 2018) ................................................................17

Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1349 (11th Cir. 2007) ................................................................................................ 25, 32

Steger v. Gen. Elec. Co., 318 F.3d 1066, 1077-78 (11th Cir. 2003) ............... 10, 25

Sullivan v. Boorstin, 1980, D.D.C., 484 F. Supp. 836, 842 ................................23

Telma Hall v. Alabama State Univ., C.A.N.: 2:16-CV-593-JTA...........................28

Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 767 (11th Cir. 2005) ..............31

Waters v. Turner, Wood & Smith Ins. Agency, Inc., 874 F.2d 797, 799 (11ᵗʰ Cir. 1989) ........................................................................................................16

**Statutes**

20 U.S.C. § 1681(a) ...........................................................................................17
29 U.S.C. § 206(d)(1)..........................................................................................10
29 U.S.C. § 215(a)(3)..........................................................................................28
Alabama Code § 25-1-30 ....................................................................................11
Clarke-Figures Equal Pay Act ..........................................................................1, 11
Equal Pay Act of 1963 .......................................................................... 1, 9, 10, 11
Title IX of the Education Amendments of 1972...................................... 1, 9, 17, 35
Title VII............................................................................................ 9, 17, 18, 23

**Rules**

Eleventh Circuit Court of Appeals Rules, Rules 26.1-1, 26.1-2 and 26.1-3 ............1
Fed.R.App.27(d) ................................................................................................36
Fed.R.App.P.32(f).............................................................................................36

Federal Rules of Appellate Procedure, Rule 26.1......................................................1

## STATEMENT OF THE ISSUES

1. Whether the district court properly granted summary judgment on Sha'Ola Terrell's ("Terrell") Equal Pay Act of 1963 ("EPA") and Clarke-Figures Equal Pay Act ("CFEPA") claims when there was no male comparator paid more than Terrell.

2. Whether the district court properly granted summary judgment on Terrell's Title IX of the Education Amendments of 1972 ("Title IX") claim when there was no similarly-situated male employee who was paid more than Terrell.

3. Whether the district court properly granted summary judgment to ASU when ASU demonstrated that it paid Terrell based upon a pre-established budget and not gender.

4. Whether the district court properly granted summary judgment to ASU's on Terrell's claim of retaliation when Terrell did not engage in protected activity as required by the EPA.

5. Whether the district court properly granted ASU's motion for summary judgment when Terrell failed to rebut ASU's legitimate, non-retaliatory reasons for Terrell's non-reappointment.

## STATEMENT OF THE CASE

## I.   THE COURSE OF PROCEEDINGS IN THE DISTRICT COURT

This action originated in the United States District Court for the Middle District of Alabama ("the district court") on January 25, 2022 when ASU filed a Notice of Removal to remove Terrell's state court Complaint to the district court. (Doc. 1, Notice of Removal; Doc. 1-1, State Court Complaint). Terrell's Second Amended Complaint serves as the basis of her claims that are subject to this appeal. (Doc. 16 and Doc. 32). ASU filed a motion for summary judgment and a brief in support thereof on August 9, 2023. (Doc. 21 and Doc. 22). The district court entered a memorandum opinion and order and final judgment granting ASU's motion for summary judgment on October 30, 2023. (Doc. 31 and Doc. 32). Terrell filed her notice of appeal on November 8, 2023. (Doc. 35).

## II.   STATEMENT OF FACTS

## A. TERRELL'S EMPLOYMENT AT ASU

On August 22, 2018, a Request for Authorization to Fill Vacancy Form was approved to fill the position of Senior Associate Athletic Director for Internal Operations at ASU. (Doc. 23-1, Request for Authorization to Fill Vacancy Form). The budgeted proposed salary for the position was a maximum of $75,000. (Doc. 23-1, Request for Authorization to Fill Vacancy Form). The form was approved by the Vice President for Business and Finance, the Director of Athletics and the

University President.  (Doc. 23-1, Request for Authorization to Fill Vacancy Form).

On August 24, 2018, Terrell applied for the position of Senior Associate Athletic

Director.  (Doc. 23-2, Terrell August 24, 2018 Application).  Terrell interviewed for

the position of Senior Associate Athletic Director.  She was interviewed by Jennifer

Williams, the then Director of Athletics, Terrance Jones, the then Deputy Director

of Athletics, and Latisha Phillips, a representative from ASU's Office of Human

Resources.  (Doc. 23-3, Terrell Depo., pp. 29-30, ln. 25-22; Doc. 23- 4, New Hire

Request Form).

Terrell was selected as the recommended candidate with a salary of $75,000.

(Doc. 23-4, New Hire Request Form).[1]  Williams contacted Terrell about her

selection and they discussed that the salary would be $75,000.  (Doc. 23-3, Terrell

Depo., pp. 31-32, ln. 3-4).  Terrell executed a Notice of Employment which specified

that she would be employed as the Senior Associate Athletic Director for Internal

Operations with a salary of $75,000, a start date of October 1, 2018 and a status of

executive.  (Doc. 23-5, Terrell September 25, 2018 Notice of Employment).

Terrell's duties as the Senior Associate Athletic Director included evaluating the

University efforts to maintain institutional control of the athletic program; making

recommendations to the Director and Deputy Director of Intercollegiate Athletics

---

[1] Terrell was previously employed at ASU as the Director of Compliance from October 2008 to September 2010.
(Doc. 23-3, Terrell Depo., p. 16, ln. 3-9).   She resigned from her previous employment at ASU.  (Doc. 23-3, Terrell
Depo., p. 19, ln. 9-21).  Her claims in this appeal are unrelated to her previous period of employment.

regarding NCAA Governance matters; overseeing the day-to-day operations of the compliance department, athletic academic advising, sports medicine and strength and conditioning; serving as liaison for all eligibility functions and processes including the eligibility certification process and serving as an athletic contact for Authorized Eligibility Signature in the office of the Deans, Registrar, and Financial Aid. (Doc. 23-21, Senior Associate Athletic Director for Internal Operations Job Posting).

On October 21, 2018, Williams submitted a Memorandum to Derrick Carr, Assistant Vice President for Human Resources, requesting the funding sources for Terrell's salary be changed but the overall amount of $75,000 would be unchanged. (Doc. 23-6, Williams October 21, 2018 Memorandum). On November 6, 2018, Terrell executed a revised Notice of Employment which again indicated that she would be employed as the Senior Associate Athletic Director for Internal Operations with a salary of $75,000, a start date of October 1, 2018 and a status of executive. (Doc. 23-7, Terrell October 30, 2018 Notice of Employment). The revised Notice of Employment only documented the change in the funding source for Terrell's salary. (Doc. 23-7, October 30, 2018 Notice of Employment). There were no subsequent changes to Terrell's salary or funding source following the revised Notice of Employment.

On May 20, 2021, Williams submitted a letter of resignation to accept a new position with an effective date of July 16, 2021.[2]  (Doc. 23-8, Williams Letter of Resignation).  Dr. Jason Cable was selected to fill the position of Athletic Director effective August 16, 2021.  (Doc. 23-9, August 16, 2021 Athletic Director Notice of Employment).  Shortly after Dr. Cable was hired he restructured his department and non-reappointed the positions of Senior Associate Athletic Director for Internal Operations, held by Terrell, and Deputy Athletic Director, held by Terrance Jones. (Doc. 23-10, Cable Aff. at ¶¶2-3).  Terrell was non-reappointed as effective September 15, 2021.  (Doc. 23-11, Terrell Notice of Non-Reappointment). As an executive status employee, Terrell was paid an additional thirty (30) days of salary though October 15, 2021.  (Doc. 23-11, Terrell Notice of Non-Reappointment; Doc. 23-3, Terrell Depo., p. 43, ln. 10-24).

### B. **TERRELL'S ALLEGED COMPARATORS**

In her deposition, Terrell claimed that her comparators are Derrick Magee, Dr. Ronald Brown and Terrance Jones.  Magee was employed as the Senior Associate Athletic Director for Business Affairs from April 25, 2011 until he accepted a different position at ASU effective November 10, 2014.  (Doc. 23-12, Magee Senior Associate Athletic Director Notice of Employment; Doc. 23-13,

---

[2] Following the hiring of her successor, Williams filed an almost identical action against ASU.  Williams v. Alabama State University, et al, C.A.N.: 2:22-CV-48-ECM-KFP.  On July 19, 2023, district court entered a Memorandum Opinion and Order granting ASU's motion for summary judgment against all of Williams' claims. Williams' appeal, No. 23-12692, to this Court is currently pending.

Magee Director of Auxiliary Enterprises Notice of Employment).  Magee's duties as the Senior Associate Athletic Director for Business Operations included responsibility for the fiscal oversight and direction of the Athletic Department; management of the budget; development of budgetary goals and forecasts; oversight over University ticketing and vending operations; equipment operations, human resources; management and supervisions of coaches; marketing of athletic events; revenue generation and management of new facility construction.  (Doc. 23-14, Senior Associate Athletic Director of Business Operations Job Posting).  Magee was paid a salary of $75,000 in the position of Senior Associate Athletic Director of Business Operations.  (Doc. 23-12, Magee Senior Associate Athletic Director Notice of Employment).

Dr. Ronald Brown was employed as the Associate Athletic Director for Academic Support effective March 21, 2011.  (Doc. 23-15, Brown Associate Athletic Director Notice of Employment).  Dr. Brown's duties as the Associate Athletic Director of Academic Support were being responsible for student-athlete academic support, monitoring academic progress, coordinating academic support services; basic life skills programming and career development; and advising Student Athlete Advisory Committee.  (Doc. 23-16, Associate Athletic Director for Academic Support Services Job Posting).  His salary for this position at the time of

hire was $70,000.[3] [4]   (Doc. 23-15, Brown Associate Athletic Director Notice of Employment).  Shortly after she was hired, Terrell recommended that Dr. Brown be non-reappointed from his position of Associate Athletic Director.  (Doc. 23-20, Brown November 6, 2018 Notice of Non-Reappointment; Doc. 23-3, Terrell Depo., pp. 41-42, ln. 15-3).

Terrance Jones was the former Deputy Athletic Director.  Jones' salary was $95,000.  (Doc. 27-24, Jones Notice of Employment).  Jones' job duties included supervising administrative staff, negotiating contracts and reviewing all contracts, representing the department in University, NCAA and conference meetings.  (Doc. 27-25, Deputy Athletic Director Job Posting). Jones, as the Deputy Athletic Director, assisted the Athletic Director in the overall supervision and implementation of the department.  (Doc. 27-25, Deputy Athletic Director Job Posting). Dr. Cable also recommended Jones' non-reappointment effective September 15, 2021.  (Doc. 23-10 at ¶ 3).

---

[3] By January 9, 2015, Brown's salary as the Associate Athletic Director had increased to $73,000.  (Doc. 23-17, Moore January 9, 2015 Letter to Brown).

[4] Effective October 21, 2014, Brown was appointed as the Assistant Vice President of Enrollment with a salary of $95,000.  (Doc. 23-18, Brown Assistant Vice President Notice of Employment; Doc. 23-19, Carr Aff. at ¶3).  However, the ASU Board of Trustees did not approve him for this appointment and his salary was to revert back to his salary for the position of Associate Athletic Director for Academic Support Services at $73,000 effective February 6, 2015. (Doc. 23-17, Moore January 9, 2015 Letter to Brown; Doc. 23-19, Carr Aff. at ¶3).  Mistakenly, that reversion was not made by the University's payroll department and Brown continued to receive the Assistant Vice President salary after February 6, 2015 until his non-reappointment from the University. (Doc. 23-19, Carr Aff. at ¶4).

In her response to ASU's motion for summary judgment, Terrell added Lonnie Brown as male who allegedly did less work than her and was paid the same salary of $75,000.  When asked about comparators during her deposition, Terrell did not identify Lonnie Brown, but she identified him as a comparator in her Affidavit. (Doc. 23-3, Terrell Depo., pp. 78-79, ln. 6-1; p. 87, ln. 14-25; Doc. 25-1 at ¶ 42). Lonnie Brown served in the role as Head Strength and Conditioning Coach.  Lonnie Brown was hired as a critical need hire based upon the "special skills [needed] in physical fitness of Division I student athletes and nutrition factors that provide proper body maintenance."  (Doc. 23-23, Critical Position Hiring Rubric).  Notably, Terrell served as the hiring manager for Lonnie Brown's hire at ASU.  (Doc. 23-23, Critical Position Hiring Rubric).

## III.    <u>STANDARD OF REVIEW</u>

This appeal arises from the district court's granting of ASU's motion for summary judgment.  This Court reviews the granting of summary judgment on appeal using the *de novo* standard.  <u>Furcron v. Mail Ctrs. Plus, LLC,</u> 843 F.3d 1295, 1304 (11th Cir. 2016).

## SUMMARY OF THE ARGUMENT

The district court correctly granted ASU's motion for summary judgment. Terrell failed to present the proper comparative evidence as required to establish a *prima facie* case under the Equal Pay Act ("EPA") and Alabama's Clarke-Figures

Equal Pay Act ("CFEPA") paid less for substantially the same work. Likewise, she failed to present proper comparative evidence to show that she was treated less favorably than similarly-situated male employees as required by Title IX as analyzed under Title VII. Moreover, ASU had factors other than sex which made the basis for Terrell's salary. Specifically, Terrell's salary was based upon a budget that was established during the pre-application stage of the hiring process. These factors also serve as ASU's legitimate, non-discriminatory reasons for Terrell's salary. Terrell cannot articulate a *prima facie* case of retaliation under the EPA because she did not engage in protected activity.

## **ARGUMENT**

## **I.**    **TERRELL FAILED TO PRESENT EVIDENCE OF A PROPER COMPARATOR TO SUPPORT HER CLAIMS UNDER THE EPA AND CFEPA**

The EPA prohibits an employer from paying employees different wages based upon the sex of the employees. Hornsby-Culpepper v. Ware, 906 F.3d 1302, 1313 (11th Cir. 2018). This Court utilizes a burden shifting framework when analyzing EPA claims. Hornsby-Culpepper, 906 F. 3d at 1314; see also Reddy v. Dep't of Educ., 808 Fed. Appx. 803, 810 (11th Cir. 2020).

> Under this framework, the plaintiff must first establish a prima facie case by showing "that the employer paid employees of opposite genders different wages for equal work for jobs [requiring] 'equal skill, effort, and responsibility, and which are performed under similar working conditions.'" Steger v. Gen. Elec. Co., 318 F.3d 1066, 1077-78 (11th

Cir. 2003) (quoting <u>Irby v. Bittick</u>, 44 F.3d 949, 954 (11th Cir. 1995)).
...

If the plaintiff establishes a prima facie case, the burden shifts to the employer to prove, by a preponderance of the evidence, that the pay discrepancy is based on one of the four affirmative defenses provided for in the EPA: "(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1); <u>Irby</u>, 44 F.3d at 954. "The burden is a 'heavy one' because the '[employer] must show that the factor of sex provided no basis for the wage differential.'' <u>Id</u>. at 954 (emphasis in original) (quoting <u>Mulhall</u>, 19 F.3d at 590); see also <u>Bowen</u>, 882 F.3d at 1362. …

The plaintiff may then rebut the explanation with evidence showing that the employer's proffered explanation is "pretextual or offered as a post-event justification for a gender-based differential." <u>Id</u>. at 954. To establish pretext, the plaintiff "must produce evidence which directly establishes discrimination, or which permits a jury to reasonably disbelieve the employer's proffered reason." <u>Steger</u>, 318 F.3d 1079; <u>Elrod v. Sears, Roebuck and Co.</u>, 939 F.2d 1466, 1472 … An employee cannot establish pretext "by simply quarreling with the wisdom" of the defendant's proffered nondiscriminatory reason. <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc); <u>see</u> <u>also</u> <u>Hornsby-Culpepper v. Ware</u>, 906 F.3d 1302, 1314 (11th Cir. 2018) (summary judgment was appropriate where employee merely "quarreled with the wisdom of [her employer's] reasons, [but] failed to point to any affirmative evidence establishing that his proffered reasons were false or a pretext for unlawful sex discrimination"). If the plaintiff fails to produce such evidence, the district court does not err in granting summary judgment in favor of the employer. <u>Steger</u>, 318 F.3d at 1078-79.

<u>Reddy</u>, 808 Fed. Appx. at 810.

The CFEPA is codified at Alabama Code § 25-1-30.  The act prohibits employers from paying workers for the same work based upon sex or race.  <u>Ala. Code</u> § 25-1-30 (b).  Like the EPA, the CFEPA allows for differences in pay if based upon "1) a

seniority system; 2) a merit system; 3) a system that measures earnings by quantity or quality of production; [or] a differential based on any factor other than sex or race" Id. The district court correctly analyzed the CFEPA using the EPA framework. (Doc. 31 at p. 5). See also Williams v. Ala. State Univ., No. 2:22-CV-48-ECM, 2023 U.S. Dist. LEXIS 124135 *, 2023 WL 4632386 (M. D. Ala. July 19, 2023).

To establish a prima facie case of a violation under the EPA and the CFEAP, a plaintiff must show that the employer "paid different wages to employees of different sexes for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." Arrington v. Cobb, 139 F.3d 865, 876 (11th Cir. 1998). Although "the plaintiff need not prove that her job and those of her comparators are identical[,]…the standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high." Blackmon v. Fla. Dep't of Bus. & Prof'l Regulation, 599 Fed. Appx. 907, 909 (11th Cir. 2015) (quoting Mulhall v. Advance Sec., Inc., 19 F.3d 586, 592 (11th Cir. 1994)). The district court properly granted ASU's motion for summary judgment because Terrell failed to present proper comparators.

Terrell also fails to present proper comparators before this Court. This Court has held that it is the employee's responsibility to present evidence regarding the skills

and qualifications needed for the jobs in question.  See Hamilton v. Sikorsky Aircraft, Corp., 760 Fed. Appx. 872, 876-77 (11th Cir. 2019) (holding that the employee's conclusory statements that she performed the same work as her comparators was not sufficient evidence); Blackmon, 599 Fed. Appx. at 910 (holding that the employee "bore the burden of demonstrating that the 'jobs at issue are substantially similar.'").

## A. DR. BROWN, LONNIE BROWN AND MAGEE WERE NOT PAID MORE THAN TERRELL FOR SUBSTANTIALLY SIMILAR WORK

In her Appellant's Brief, Terrell states that she "was paid less than male employees who reported to [her]" and that these men "had significantly less responsibilities" than she did.  (Doc. 15 at p. 30).  Terrell names Dr. Ronald Brown, Lonnie Brown and Derrick Magee as her comparators.  ASU presented evidence that Dr. Brown's salary in his role as an Assistant Athletic Director was $73,000, which is less than her salary of $75,000.  (Doc. 23-17, Moore January 9, 2015 Letter to Brown; Doc. 23-19, Carr Aff. at ⁋3).  Terrell argues without any evidence that the error made in payroll to revert Dr. Brown's salary was not an oversight, but was somehow intentional.  Additionally, Terrell does not dispute that she made the same salary as both Lonnie Brown and Magee --$75,000.  Terrell must show 'that she performed substantially similar work for *less* pay.' Heatherly v. Univ. of Ala. Bd. of Trs., 778 Fed. Appx. 690, 692 (11th Cir. 2019) (quoting Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1526 (11th Cir. 1992)).  Under these

circumstances alone, Dr. Brown, Lonnie Brown and Magee are not proper comparators.

Terrell argues that Lonnie Brown reported to her and that Magee did not also serve as the Senior Woman Administrator ("SWA"). But as Terrell attested to in the hiring documents for Lonnie Brown, Lonnie Brown's work was high skilled and specialized. Lonnie Brown served in the role as Head Strength and Conditioning Coach. Lonnie Brown was hired as a critical need hire based upon the "special skills [needed] in physical fitness of Division I student athletes and nutrition factors that provide proper body maintenance." (Doc. 27-23, Critical Position Hiring Rubric). The fact that Lonnie Brown organizationally reported through Terrell is not evidence that they performed substantially the same work or even that he performed less work than she performed. See Blackmon, 599 Fed. Appx. at 910 (stating that an organizational chart showing that the comparator was subordinate to the employee was not enough evidence to demonstrate that the employee and the comparator performed substantially similar work).

As it relates to Magee, Terrell argues that although the two were both paid $75,000, she was not paid for duties associated with the Senior Woman Administrator ("SWA") designation. Thus, according to Terrell, ASU violated the EPA and CFEPA. This Court has held that the EPA analysis focuses on the primary job functions of the employees and not on "incidental or insubstantial job duties."

13

Heatherly, 778 Fed. Appx. at 692 (citing Miranda, 975 F.2d at 1526).  The SWA

designation was not a part of Terrell's (or Magee's) job duties as Senior Associate

Athletic Directors.  (Doc. 23-21, Sr. Assoc. AD for Internal Operations Job Posting;

Doc. 23-14, Sr. Assoc. AD of Business Operations Job Posting).  The SWA is an

NCAA designation typically given to the highest ranking woman on staff in the

athletic department.  (Doc. 27-26, Cable Supplemental Affidavit at ¶4; Doc. 27- 27,

Cable Depo., p. 10, ln. 18-23). The NCAA indicates that the SWA is not a job but a

designation that ensures a female voice in decision-making. (Doc. 27-28, NCAA

SWA Information).  The use of an SWA is also a choice of the college or university.

(Doc. 27-28, NCAA SWA Information).   Terrell admits that she voluntarily

continued to serve in the role of the Senior Woman Administrator after being

informed that there would be no compensation for the designation.  (Doc. 23-3,

Terrell Depo., p. 85, ln. 9-19).

## B. TERRELL FAILED TO ESTABLISH THAT SHE AND JONES PERFORMED SUBSTANIALLY SIMILAR WORK

This Court previously articulated the standard for determining whether jobs

were substantially similar under the EPA:

> The standard for determining whether jobs are equal in terms of skill, effort, and responsibility is high.

> When Congress enacted the Equal Pay Act, it substituted the word "equal" for "comparable" to show that "the jobs involved must be virtually identical, that is, they would be very much alike or closely

related to each other." The restrictions in the Act were meant "to apply only to jobs that are substantially identical or equal."

Brennan v. City Stores, Inc., 479 F.2d 235, 238 (5th Cir. 1973) (footnote omitted). Similarly, in Hodgson v. Golden Isles Convalescent Homes, Inc., 468 F.2d 1256 (5th Cir. 1972), the court stated "by substituting the term 'equal work' for 'comparable work,' which was originally suggested, Congress manifested its intent to narrow the applicability of the Act." Id. at 1258. Congress intended to permit employers wide discretion in evaluating work for pay purposes. Id. Thus, although employees do not have to prove jobs are identical, they have the heavy burden of proving "substantial identity of job functions." Id.

Waters v. Turner, Wood & Smith Ins. Agency, Inc., 874 F.2d 797, 799 (11th Cir. 1989). Terrance Jones was the former Deputy Athletic Director. Jones' salary was $95,000. (Doc. 27-24, Jones Notice of Employment). While both Terrell and Jones' jobs included supervising head coaches, Jones' position included more upper level administrative functions for the entire Department of Athletics. Jones' job duties included supervising administrative staff, negotiating contracts and reviewing all contracts, representing the department in University, NCAA and conference meetings. (Doc. 27-25, Deputy Athletic Director Job Posting). Jones, as the Deputy Athletic Director, assisted the Athletic Director in the overall supervision and implementation of the department. (Doc. 27-25, Deputy Athletic Director Job Posting). Based upon these differences, Jones' job and Terrell's job were not substantially similar.

## II.    TERRELL CANNOT ESTABLISH A PRIMA FACIE CASE OF A PAY DISPARITY UNDER TITLE IX

Title IX prohibits the recipients of federal funding from discriminating on the basis of gender: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Although the United States Court of Appeals for the Eleventh Circuit nor the United States Supreme Court have held that Title VII serves to absolutely preempt Title IX claims in the employment context, the district courts throughout the Eleventh Circuit have held that employment discrimination claims should be pursued under the requirements of Title VII. See Reza v. Univ. of S. Ala., 2018 U.S. Dist. LEXIS 207029, No. 18-CV-000009-JB-B (S.D. Ala. December 4, 2018); Morris v. Wallace Cmty Coll. Selma, 125 F. Supp. 2d 1315, 1342-43 (S.D. Ala. 2001). In the context of employment discrimination claims, this Court has held that "Title VII provides the exclusive remedy for employment discrimination claims on the basis of sex in federally funded educational institutions." Blalock v. Dale Cnty. Bd. of Educ., 84 F. Supp. 22 1291, 1298 (M.D. Ala. 1999). The district court reviewed Terrell's Title IX claim using the Title VII framework.

The McDonnell-Douglas framework used to analyze Title VII employment discrimination claims requires the plaintiff to show that "(1) that she belongs to a

protected class; (2) that she was subjected to an adverse employment action; (3) that she was qualified to perform the job in question; and (4) that her employer treated similarly situated employees outside of her class more favorably." Lewis v. City of Union City, Ga., 918 F.3d 1213, 1220-21 (11th Cir. 2019). Should the plaintiff establish a *prima facie* case, the defendant then has the ability to produce legitimate, non-discriminatory reasons for its decision. Lewis, 918 F.3d at 1221. The plaintiff can only refute these reasons by showing that the reasons are false and that the discrimination was the true purpose for the employment decision. Id. ASU was properly granted summary judgment because could Terrell not produce a proper comparator.

This Court has held that a plaintiff's demonstration of a similarly-situated employee who was treated more favorably is essential to a *prima facie* case of intentional discrimination. Lewis, 918 F.3d at 1222-23. Further, as it relates to the analysis of whether employees are similarly-situated, this Court has "as its label indicates—'all material respect'—*a valid comparison will turn not on formal labels, but rather on substantive likenesses*. To borrow phrasing from a recent Supreme Court decision, a plaintiff and her comparators must be sufficiently similar, in an objective sense, that they '*cannot reasonably be distinguished*.' Young, 135 S. Ct. at 1355." Id. at 1228 (emphasis added). The employee must show evidence that the comparators 1) engaged in the same conduct; 2) were subject to the same policies; 3) were subject to

17

the same supervision; and 4) share the same employment history. Id. Terrell does not submit such comparative evidence.

The job descriptions show that Terrell, Jones, Dr. Brown, Lonnie Brown and Magee all had positions within ASU's Department of Athletics. (Doc. 23-21; Doc. 27-23; Doc. 27-25; Doc. 23-14). However, they were all hired in different time periods. Terrell did not share a supervisor or hiring manager with Dr. Brown, Lonnie Brown or Magee. In fact, Terrell served as the hiring manager for Lonnie Brown. But more importantly, the job duties of the different positions were not so that they "cannot be reasonably distinguished."

Magee's duties as the Senior Associate Athletic Director for Business Operations was budget and monetary focused. (Doc. 23-14, Senior Associate Athletic Director of Business Operations Job Posting). His duties included responsibility for the fiscal oversight and direction of the Athletic Department; management of the budget; development of budgetary goals and forecasts; oversight over University ticketing and vending operations; equipment operations, human resources; management and supervisions of coaches; marketing of athletic events; revenue generation and management of new facility construction. (Doc. 23-14, Senior Associate Athletic Director of Business Operations Job Posting). Magee was paid a salary of $75,000 in the position of Senior Associate Athletic Director of

Business Operations. (Doc. 23-12, Magee Senior Associate Athletic Director Notice of Employment).

Dr. Ronald Brown was employed as the Associate Athletic Director for Academic Support effective March 21, 2011. (Doc. 23-15, Brown Associate Athletic Director Notice of Employment). Dr. Brown's role was focused on student athletes' academic success. His duties as the Associate Athletic Director of Academic Support were being responsible for student-athlete academic support, monitoring academic progress, coordinating academic support services; basic life skills programming and career development; and advising Student Athlete Advisory Committee. (Doc. 23-16, Associate Athletic Director for Academic Support Services Job Posting). His salary for this position at the time of hire was $70,000. (Doc. 23-15, Brown Associate Athletic Director Notice of Employment).

Terrance Jones was the former Deputy Athletic Director. Jones' salary was $95,000. (Doc. 27-24, Jones Notice of Employment). Jones' served as the second in command within the Department of Athletics and his job duties included the direct supervision of administrative staff and the day-to-day operations of the department. Jones was responsible for reviewing and negotiating all contracts. Jones represented the department in University, NCAA and conference meetings. (Doc. 27-25, Deputy Athletic Director Job Posting). Jones was also responsible for creating and leading

a *Letter Winner* program to engage and support former student athletes.  (Doc. 27-25, Deputy Athletic Director Job Posting).

Terrell's duties as the Senior Associate Athletic Director focused on compliance and eligibility.  (Doc. 23-21, Sr. Assoc. AD for Internal Operations Job Posting).  Her duties included evaluating the University efforts to maintain institutional control of the athletic program; making recommendations to the Director and Deputy Director of Intercollegiate Athletics regarding NCAA Governance matters; overseeing the day-to-day operations of the compliance department, athletic academic advising, sports medicine and strength and conditioning; serving as liaison for all eligibility functions and processes including the eligibility certification process and serving as an athletic contact for Authorized Eligibility Signature in the office of the Deans, Registrar, and Financial Aid.  (Doc. 23-21, Senior Associate Athletic Director for Internal Operations Job Posting).

The salaries of Terrell's comparators, Dr. Brown, Lonnie Brown and Magee, for the positions that they held in the Athletics Department were either the same or lesser than Terrell's.  Magee was paid a salary of $75,000 in the position of Senior Associate Athletic Director of Business Operations.  (Doc. 23-12, Magee Senior Associate Athletic Director Notice of Employment).  Brown was paid a salary of $73,000 as the Associate Athletic Director of Academic Support Services.  (Doc. 23-17, Moore January 9, 2015 Letter to Brown).  Terrell's salary was $75,000 for

her position of Senior Associate Athletic Director of Internal Operations.  (Doc. 23-5, Terrell September 25, 2018 Notice of Employment).  Jones' salary as the Deputy Athletic Director was $95,000 and higher than Terrell's.  (Doc. 27-24, Jones Notice of Employment).  However, Terrell did not present sufficient evidence that her position and Jones were so similar that they could not reasonably be distinguished.  Terrell presented to the district court and also to this Court what appears to be a job description for a Senior Associate Athletic Director for Internal Operations.  (Doc. 25-9).  ASU does not concede that this is an actual ASU job description.  It was not produced from any ASU file and unlike the job descriptions produced by ASU does not have an actual job posting date to show when applications were actually accepted for the position.  ASU's arguments are based upon the job posting dated August 23, 2018 for which Terrell applied on August 24, 2018.     (Doc. 23-21, Sr. Assoc. AD for Internal Operations Job Posting; Doc. 23-2, Terrell Application).  Based upon the record, the district court correctly held that there was not a similarly-situated male who was treated more favorably than Terrell in regards to pay.

### III.   ASU HAD LEGITIMATE, NON-DISCRIMINATORY FACTORS OTHER THAN SEX IN ESTABLISHING TERRELL'S SALARY

#### A. THE MAXIUMUM SALARY FOR TERRELL'S JOB WAS SET PRIOR TO HER BEING SELECTED FOR THE POSITION

As previously stated, if a *prima facie* case of unequal pay is established under the EPA and the CFEPA, both acts allow the employer to cite to factors other than sex

as the basis for the pay differential. Similarly, under the Title VII framework, the employer is allowed to present legitimate, non-discriminatory reasons for its employment actions. "The employer may [make employment decisions] for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason. Megill v. Board of Regents, 5 Cir.1976, 541 F.2d 1073, 1077; Sullivan v. Boorstin, 1980, D.D.C., 484 F. Supp. 836, 842. 'While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason . . . does not have to be a reason that the judge or jurors would act on or approve.' Loeb v. Textron, Inc., 1 Cir.1979, 600 F.2d 1003, 1012 n. 6." Nix v. WLCY Radio/Rahall Commc'ns, 738 F.2d 1181, 1187 (11th Cir. 1984). Here, the reasons for Terrell's salary was that the salary was pre-determined and advertised based upon ASU's budget.

Terrell herself testified to having experience in the setting of salaries at ASU:

Q. So when you hired a new employee, how did you establish the salary for that person or the position?
A. ***That was based off of the funding that was already allotted for that position. So if we were replacing a coach, it was within—whatever business and finance deemed that salary range or that exact salary, that's what we based it off of***.
…
Q. In the process that you would undertake to hire new personnel, did you have to complete a Request for Authorization to Fill Vacancy?
A. Yes.

Q. Okay. And there is a section down here that says, Budgeted Proposed Salary. Is that a section that you would have to complete?

A. Yes, I believe so. Uh-huh.

Q. And where would you get that information from?

A. Our business and finance.

Q. And is that what you were referring to that the salary would be based upon the funding allotted for the position?

A. Yes.

(Doc. 23-3, Terrell Depo., pp. 39-40, ln. 13-23) (emphasis added). This same

process was used for Terrell's hire and salary. A Request for Authorization to Fill

Vacancy Form was approved to fill the position of Senior Associate Athletic

Director for Internal Operations at ASU. (Doc. 23-1, Request for Authorization to

Fill Vacancy Form). A budgeted proposed salary for the position was included on

the form at a maximum of $75,000. (Doc. 23-1, Request for Authorization to Fill

Vacancy Form). The form was approved by the Vice President for Business and

Finance, the Director of Athletics and the University President. (Doc. 23-1, Request

for Authorization to Fill Vacancy Form). These steps were done before Terrell even

applied for the position. Terrell was offered the maximum salary of $75,000. Terrell

accepted this salary and executed her Notice of Employment to begin her

employment as the Senior Associate Athletic Director effective October 1, 2018.

## B. TERRELL CANNOT SHOW PRETEXT IN ASU'S REASONS FOR SETTING HER SALARY

A plaintiff 'must produce evidence which directly establishes discrimination' to establish pretext.  Reddy, 808 Fed. Appx. at 810 (quoting Steger v. G.E., 318 F.3d 1066, 1079 (11th Cir. 2003)).  To establish pre-text:

> The plaintiff must then prove, by a preponderance of the evidence, that the legitimate reason proffered was a mere pretext for discrimination. Id. "[A] reason is not pretext for discrimination '*unless it is shown both that the reason was false, and that discrimination was the real reason*.'" Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1349 (11th Cir. 2007) (quoting Brooks v. Cty. Comm'n of Jefferson Cty., 446 F.3d 1160, 1163 (11th Cir. 2006)). ***The employee must rebut the reason "head on" and "cannot succeed by simply quarreling with the wisdom of that reason*.**" Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc); see also Crawford v. City of Fairburn, Ga., 482 F.3d 1305, 1308 (11th Cir. 2007) (explaining that, where more than one legitimate reason is given, the plaintiff must rebut each one). ***At the summary judgment stage, "[t]he district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence*.**" Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (alteration in original) (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Hornsby-Culpepper, 906 F.3d at 1312 (emphasis added).

Terrell argues that ASU's reasons are pre-textual because ASU, as she alleges, has a history of discriminatory pay practices.  To support her claims of pay disparity based upon gender, Terrell attempts to use a pattern and practice theory.  She cites portions of Carr's deposition from the Jennifer Williams v. Alabama State

<u>University</u>, et al, C.A.N.: 2:22-CV-48-ECM-KFP case where he gave salaries of various past and present employees when asked by counsel for Terrell.  The mere fact that certain males were paid higher wages than females in certain positions does not establish a pattern and practice on the part of ASU.  "A plaintiff may establish a pattern or practice claim 'through a combination of strong statistical evidence of disparate impact coupled with anecdotal evidence of the employer's intent to treat the protected class unequally.' <u>Mozee v. American Commercial Marine Service Co.</u>, 940 F.2d 1036, 1051 (7th Cir.1991)."  <u>EEOC v. Joe's Stone Crab, Inc</u>., 220 F.3d 1263, 1286-1287 (11th Cir. 2000).

> Where gross statistical disparities can be shown, they alone may in a proper case constitute prima facie proof of a pattern or practice of discrimination." <u>Hazelwood Sch. Dist. v. United States</u>, 433 U.S. 299, 307, 308, 53 L. Ed. 2d 768, 97 S. Ct. 2736 (1977). In order to adequately analyze statistical data, however, there must be evidence submitted identifying the basic qualifications for the positions at issue and a determination of the relevant statistical pool to be used as a comparison. <u>Peightal v. Metropolitan Dade County</u>, 26 F.3d 1545, 1553, 1554 (11th Cir. 1994).

<u>Hubbard v. Delchamps, Inc.</u>, C.A.N. 97-1188-AH-S, 1998 U.S. Dist. LEXIS 11049, at *13-14 (S.D. Ala. July 10, 1998) (holding that the plaintiff had not shown pattern and practice by noting that female vice presidents were paid less and that there were no females in certain positions within the company).  Terrell has not produced any evidence regarding the education and/or background of any of these individuals.  Nor has she offered any evidence regarding the qualifications required for the

particular positions for which the individuals held.  Terrell has not established a discriminatory pattern and practice on the part of ASU.  Terrell also cites to the testimony of ASU's former Director of Human Resources, Willie E. Dixon, from the matter of <u>Telma Hall v. Alabama State Univ.</u>, C.A.N.: 2:16-CV-593-JTA, regarding the difference in ASU's softball and baseball program budgets.  Although the case went to trial on a singular issue involving the employee's suspension, ASU was granted summary judgment on Hall's Equal Pay Act and gender discrimination in pay claims.  <u>Hall</u>, C.A.N.: 2:16-CV-593-GMB, 2018 U.S. Dist. LEXIS 145149 at *24-28 (August 27, 2018).  Further, nothing within Terrell's argument regarding pre-text speaks to the setting of salaries based upon the preapproved budget.

## IV.  <u>ASU DID NOT RETALIATE AGAINST TERRELL</u>

In Count Three of her Second Amended Complaint, Terrell alleged that her non-reappointment was retaliatory: "[t]he termination violated the EPA and the Clarke Figures Equal Pay Act which specifically prohibit retaliation in response to reporting."  (Doc. 16 at ℙ 39).  "The anti-retaliation provision of the Equal Pay Act, as incorporated into the FLSA [Fair Labor Standards Act], makes it unlawful for an employer to discharge or otherwise retaliate against an employee for filing a complaint or instituting proceedings related to the FLSA. 29 U.S.C. § 215(a)(3)."  <u>Hornsby-Culpepper</u>, 906 F.3d at 1314.  The United States Court of Appeals for the Eleventh Circuit has held that a plaintiff must show that "(1) she engaged in activity

protected under the act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." Id.

## A. TERRELL DID NOT ENGAGE IN PROTECTED ACTIVITY

Terrell's retaliation claim fails because she cannot show that she filed a complaint or instituted proceedings related to a violation of the Equal Pay Act or rather she did not engage in protected activity under the Act.

> Although the filing of a complaint under § 215(a)(3) need not be in the form of an official complaint, see E.E.O.C. v. White & Son Enters., 881 F.2d 1006, 1011 (11th Cir. 1989), or even be in writing, some degree of formality is required in order that the employer has fair notice that an employee is lodging a grievance. Kasten, 131 S. Ct. at 1334-36. This "notice requirement" is essential because "an employer who does not (or should not) know an employee has made a complaint could [not] discriminate because of that complaint." Id. at 1335-36. *In keeping with this idea, the complaint must be sufficiently clear and detailed so that a reasonable employer, considering the context and content, can understand that an employee is asserting rights provided by the FLSA and calling for the protection of those rights.* Id.

Miller v. Roche Sur. & Cas. Co., 502 F. App'x 891, 894 (11th Cir. 2012) (emphasis added).  In her deposition, Terrell testified that her complaints regarding pay disparities constituted the following:

1. Requesting additional budget funds to paid be as the Senior Woman Administrator ("SWA");

2. Bringing up funding differences between different sport programs while serving on a compensation review committee;

3. Williams discussing the difference in pay between Terrell and Brown while reviewing Brown's employment situation.

In its motion for summary judgment, ASU noted how these alleged actions do not meet the notice requirement that an employee was exercising her rights under the EPA.  In response to ASU's motion for summary judgment, Terrell attempted to manufacture protected activity by asserting in her affidavit that she sent a memorandum to Dr. Jason Cable during the week of September 13, 2021 regarding being paid for the Senior Woman Administrator designation. (Doc. 25-1 at ℙ 55).

In Miller v. Roche Sur. & Cas. Co., 502 F. App'x 891, 894 (11th Cir. 2012), the plaintiff alleged that she exercised protected activity by sending an email to her supervisor requesting a time and a place to express breast milk.  "***Far from notifying Roche that a grievance had been lodged*, *this email does not allege or even intimate that Roche violated the law***." Miller, 502 Fed. Appx. at 894 (emphasis added). Here, Terrell hasn't presented the actual email that she allegedly sent as evidence in this case.  Notwithstanding, nothing in the email that Terrell allegedly sent would place Cable on notice that she was asserting a complaint about a violation of the law. Terrell was simply re-hashing her request to be paid for the SWA designation.

## B. ASU HAD LEGITIMATE, NON-RETALIATORY REASONS FOR TERRELL'S NON-REAPPOINTMENT

### 1. Terrell was non-reappointed because of the restructuring of the Department of Athletics.

"If the plaintiff establishes such a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the employment action. Once the employer proffers a non-discriminatory reason for the employment action, 'the inference of discrimination drops out of the case entirely,' and the plaintiff then has the opportunity to show that the employer's proffered reasons were a pretext for discrimination. Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 767 (11th Cir. 2005)." Kilgore v. Trussville Dev., LLC, 646 F. App'x 765, 773 (11th Cir. 2016) (emphasis added).  Like in a discrimination claim, after a plaintiff establishes a prima facie case of retaliation, the defendant may avoid liability by producing a legitimate, non-retaliatory reasons for its employment action. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001).  Should this Court find that Terrell has established a prima facie case of retaliation related to her non-reappointment, ASU asserts its legitimate, non-retaliatory reason of department restructuring.

Cable testified that upon his appointment as Athletic Director on August 16, 2021, he began planning the restructuring the Department of Athletics.  (Doc. 23-10, Cable Aff. at ¶2).  A part of that restructuring included the elimination and

revision of the Senior Associate Athletic Director of Internal Operations position, which was held by Terrell, and the Deputy Athletic Director position, which was held by Terrance Jones. (Doc. 23-10, Cable Aff. at ℙ2). Cable's actions were not extraordinary actions. Similar to Cable making organizational changes, Terrell non-reappointed and terminated staff members who reported to her just a couple of months after she was hired as the Senior Associate Athletic Director for Internal Operations. (Doc. 23-3, Terrell Depo, pp. 41-42, ln. 15-6).

## 2. Terrell cannot establish pretext in ASU's legitimate, non-retaliatory reason for her non-reappointment.

To establish pre-text:

> The plaintiff must then prove, by a preponderance of the evidence, that the legitimate reason proffered was a mere pretext for discrimination. Id. "[A] reason is not pretext for discrimination '*unless it is shown both that the reason was false, and that discrimination was the real reason*.'" Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1349 (11th Cir. 2007) (quoting Brooks v. Cty. Comm'n of Jefferson Cty., 446 F.3d 1160, 1163 (11th Cir. 2006)). *The employee must rebut the reason "head on" and "cannot succeed by simply quarreling with the wisdom of that reason.*" Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc); see also Crawford v. City of Fairburn, Ga., 482 F.3d 1305, 1308 (11th Cir. 2007) (explaining that, where more than one legitimate reason is given, the plaintiff must rebut each one). *At the summary judgment stage, "[t]he district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence*." Jackson v. State of Ala. State Tenure Comm'n, 405 F.3d 1276, 1289 (11th Cir. 2005) (alteration in original) (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997)).

Hornsby-Culpepper, 906 F.3d at 1312 (emphasis added). Terrell does not meet ASU's reason head on. She does not show that ASU's reason is both false and that discrimination (retaliation) was the true reason for her non-reappointment.

Terrell disputes the extent to which the department was restructured and that her job was not initially completely eliminated. Dr. Cable in his supplemental affidavit testified that in fact Terrell's duties were re-organized with added duties of Chief of Staff and the elimination of supervising compliance and strength and conditioning. (Doc. 27-26, Cable Supplemental Affidavit at ⱽ 2). Terrell's former position was subsequently eliminated altogether. (Doc. 2726, Cable Supplemental Affidavit at ⱽ 2).

Terrell also argues that ASU's reasons were pretextual because she was not given reasons for her non-reappointment. Terrell was non-reappointed as an executive status employee. (Doc. 23-11). The ASU Human Resources Policies and Procedures Manual states that executive status employees serve as at-will employees who serve at the pleasure of the President. (Doc. 25-7 at ASU INIT DISC 000112, 000118, 000173). Executive status employees can be non-reappointed with a thirty-day notice. (Doc. 25-7 at ASU INIT DISC 000173). In contrast, classified employees are terminated and are given a written notice of charges prior to termination. (Doc. 25-7 at ASU INIT DISC 000158). As mentioned previously in ASU's principal brief, Terrell as a supervisor recommended the non-reappointment

of Dr. Brown, an executive status employee. (Doc. 23-20, Brown November 6, 2018 Notice of Non-Reappointment).  Dr. Brown received the same type of notice that Terrell received.   (Doc. 23-20, Brown November 6, 2018 Notice of Non-Reappointment).  Reasons for the non-reappointment were not given.

## **CONCLUSION**

There is no evidence in the record to support Terrell's claims.  Terrell has not presented a comparator or a similarly-situated male employee who was paid more than she was paid.  ASU based Terrell's pay upon an established budget.  This is not discriminatory or a violation of the EPA, CFEPA or Title IX.  Terrell has not shown that she was non-reappointed because engaged in activity that is protected by the EPA (FLSA).  ASU non-reappointed Terrell because of departmental restructuring, and not any alleged acts of retaliation.  ASU respectfully requests that this Court affirm the decision of the district court in all aspects.

Respectfully Submitted,

/s/ Ramadanah M. Salaam-Jones
**KENNETH L. THOMAS (THO043)**
**RAMADANAH S. JONES (SAL026)**
***Attorneys for Alabama State University and the Board of Trustees for Alabama State University***

**OF COUNSEL:**

Kenneth L. Thomas, Esq.

Ramadanah M. Salaam-Jones, Esq.

Office of the General Counsel

**ALABAMA STATE UNIVERSITY**

P.O. Drawer 271

Montgomery, Alabama 36101-0271

(334) 229-1465 (phone)

kthomas@alasu.edu

rsjones@alasu.edu

## <u>CERTIFICATE OF COMPLIANCE</u>

1.    This document complies with the type-volume and word-count limits of

Fed.R.App.27(d) because, excluding the parts of the document exempted by

Fed.R.App.P.32(f), this document contains 7,737 words.

2.    This document complies with the typeface and type-style requirements of

Fed.R.App.P.27(d) because this document has been prepared in a proportionally

spaced typeface using Microsoft Word in 14-point Times New Roman font.

Respectfully Submitted,

/s/ Ramadanah M. Salaam-Jones
**KENNETH L. THOMAS (THO043)**
**RAMADANAH S. JONES (SAL026)**
*Attorneys for Alabama State University and the Board of Trustees for Alabama State University*

**OF COUNSEL:**
Kenneth L. Thomas, Esq.
Ramadanah M. Salaam-Jones, Esq.
Office of the General Counsel
**ALABAMA STATE UNIVERSITY**
P.O. Drawer 271
Montgomery, Alabama 36101-0271
(334) 229-1465 (phone)
kthomas@alasu.edu
rsjones@alasu.edu

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served upon the

following this Court's CM/ECF system on this the 12th day of February, 2024.

Jamie A. Johnston, P.C.
P.O. Box 4663
Montgomery, Alabama 36103
(334) 202-9228 (Phone)
(334) 265-8789 (FAX)
jamie@jjohnstonpc.com


/s/ Ramadanah M. Salaam-Jones
**OF COUNSEL**